# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALLEN ALEXANDER PARKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-968-D |
| | ) | |
| OKLAHOMA COUNTY SHERIFF | ) | |
| P.D. TAYLOR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# **O R D E R**

This matter comes before the Court for review of the Report and Recommendation [Doc. No. 50] issued by United States Magistrate Judge Shon T. Erwin pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). This prisoner case under 42 U.S.C. § 1983 has been referred to Judge Erwin for appropriate proceedings, and the R&R recommends granting motions to dismiss filed by Defendants P.D. Taylor and Keith Jackson for failure to state a § 1983 claim, and granting in part and denying in part similar motions filed by Defendants Tiffany Carter and Christopher Hendershott.[1] Defendants Carter and Hendershott have filed timely Objections [Doc. Nos. 62, 63].

---

[1] The Court previously adopted an R&R issued upon initial screening of the Complaint, and ordered a dismissal without prejudice of Plaintiff's action against Oklahoma County and a dismissal with prejudice of Plaintiff's official-capacity action and his action against the Oklahoma County Sheriff's Department and Oklahoma County Detention Center. *See* 1/17/19 Order [Doc. No. 11]. The case remains under referral to Judge Erwin for proceedings on Plaintiff's claims against nine individual defendants; only the specific issues addressed by the pending R&R and objections thereto are addressed in this Order.

After receiving two extensions of time, Plaintiff has filed a voluminous Objection [Doc. No. 76] with attachments totaling 269 pages, accompanied by a motion to file an oversized brief [Doc. No. 75]; he has filed additional motions to supplement and cure deficiencies in his filings [Doc. Nos. 77, 78, 86], such as to add a table of authorities. Plaintiff has also filed motions to supplement his Objection with additional materials [Doc. Nos. 82, 87, 89, and 91], two of which exceed 400 pages, primarily based on proposed amended pleadings.[2] In addition, Plaintiff has filed motions for additional time and to file an oversized response brief [Doc. Nos. 73, 80] to Defendants' Objections to the R&R and, without authorization, an untimely and voluminous response [Doc. No. 81] (77-page brief with 294 pages of attachments).[3] To the extent Plaintiff's filings present new materials, such as proposed amendments to his Complaint, the Court declines to consider them. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010); *Vue v. Henke*, 746 F. App'x 780, 783 (10th Cir. 2018) (unpublished).

---

[2] Within the original deadline to object to the R&R and repeatedly thereafter, Plaintiff has filed motions to amend his pleading [Doc. Nos. 54, 55, 60, 65], motions to amend or supplement those motions and respond to Defendants' objection to those motions [Doc. Nos. 83, 84, 85, 88, 90, 92], and an unauthorized Amended Complaint [Doc. No. 53]. These motions exceed the scope of this Order, which addresses only Judge Erwin's R&R and pending motions to dismiss the original Complaint. The form and substance of Plaintiffs' requests to amend his pleading and to add defendants, as well as Plaintiff's case against nonmoving defendants named in his original Complaint, remain for consideration by Judge Erwin.

[3] A response to another party's objection is due within 14 days after service. *See* Fed. R. Civ. P. 72(b)(2).

Further, the Court finds that Plaintiff has frustrated an orderly resolution of the issues addressed in the R&R by filling the case file with over a thousand pages of largely extraneous materials when the primary issue presented is the sufficiency of the Complaint to state a plausible § 1983 claim against four defendants. Because Plaintiff's papers are largely inapposite or unhelpful, the Court denies his motions to exceed the page limits of LCvR7.1(e) and to amend or supplement his Objection, motions to file a belated, oversized response to Defendants' Objections, and motions to amend or supplement that response. Only Defendants' Objections to the R&R and specific issues distilled from Plaintiff's timely Objection [Doc. No. 76] will be considered.

The Court must make a *de novo* determination of portions of the Report to which a specific objection is made, and may accept, modify, or reject the recommended decision. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The parties have waived all objections to some portions of the R&R, including Judge Erwin's summary of Plaintiff's claims and factual allegations. *See* R&R at 2-6. This introductory part of the R&R is adopted as though fully set forth herein.

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this action to recover damages for alleged violations of his constitutional rights during his pretrial confinement in the Oklahoma County Detention Center.[4] The Complaint lists the following claims: Count I, Plaintiff was exposed to raw sewage from a toilet overflow

---

[4] Plaintiff complains about jail conditions and events in late 2017 and early 2018. Plaintiff's pretrial detention ended later; he was convicted of state charges in May 2018 and sentenced in June 2018. *See State v. Parks*, No. CF-2016-7670 (Okla. Cty., Okla.), *aff'd*, No. F-2018-628 (Okla. Crim. App. Jan. 16, 2020) (summary opinion).

incident affecting his cell, which he was not allowed to leave for a four-day period nor to clean for even longer; Count II, he experienced excessive cell lockdowns that lacked a penological justification; and Count III, a guard used excessive force against him.

As to Sheriff Taylor individually, Judge Erwin finds that Plaintiff has failed to allege facts to show Sheriff Taylor's personal participation in or supervisory responsibility for the unsanitary conditions alleged in Count I. Judge Erwin further finds that Sheriff Taylor, and all other Defendants, are entitled to qualified immunity from liability on the claim of excessive lockdowns in Count II. Therefore, Judge Erwin recommends that the action against Sheriff Taylor should be dismissed without prejudice.[5]

As to Lieutenant Carter, Judge Erwin finds that Plaintiff sufficiently alleges she personally participated in his exposure to unsanitary conditions in Count I because he states that Lt. Carter refused to provide him with cleaning supplies for at least two weeks following the toilet overflow incident. As discussed *infra,* Judge Erwin rejects Lt. Carter's argument that she is entitled to dismissal of Count I because Plaintiff fails to allege sufficient facts to show she acted with deliberate indifference to his health and safety. Like all defendants, Judge Erwin finds that Lt. Carter is entitled to qualified immunity on the excessive lockdown claim in Count II and recommends that this part of her Motion should be granted.[6]

---

[5] Count III is not asserted against Sheriff Taylor.

[6] Count III is not asserted against Lt. Carter.

As to Lieutenant Hendershott, Judge Erwin finds that Plaintiff presents factual allegations that sufficiently state an excessive force claim against Lt. Hendershott, even though he is not specifically named in Count III. However, Lt. Hendershott is entitled to qualified immunity on the excessive lockdown claim in Count II, and thus Judge Erwin recommends that this part of his Motion should be granted.[7]

Finally, Judge Erwin finds that the Complaint does not state a claim against Corporal Jackson because Plaintiff alleges only that Cpl. Jackson denied him (and other inmates in his cell tier) recreation time on a single day, and in any event, Cpl. Jackson is entitled to qualified immunity on the claim in Count II.

I. **Lieutenant Carter's Objection**

Lt. Carter first objects to Judge Erwin's finding regarding the standard of liability applicable to Count I. Based on recent legal developments regarding the constitutional rights of pretrial detainees under the Due Process Clause of the Fourteenth Amendment, Judge Erwin concludes that an objective standard recognized by the Supreme Court for excessive force claims in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), should govern liability under Count I. Judge Erwin reaches this conclusion based on *Colbruno v. Kessler*, 928 F.3d 1155 (10th Cir. 2019), which he views as signaling that the Tenth Circuit has "join[ed] the Second, Seventh, and Ninth Circuits in determining that the *Kingsley* standard should apply to due process claims brought by pretrial detainees." *See* R&R at 11 (footnote omitted).

---

[7] Count I is not asserted against Lt. Hendershott.

Lt. Carter contends this conclusion is simply wrong, citing recent cases in which the Tenth Circuit has acknowledged a circuit split "on whether *Kingsley* alters the standard for conditions of confinement . . . claims brought by pretrial detainees" and has declined to "resolve this question for our circuit." *Burke v. Regalado*, 935 F.3d 960, 991 n.9 (10th Cir. 2019) (internal quotation omitted); *see also McCowan v. Morales*, 945 F.3d 1276, 1291 n.12 (10th Cir. 2019) (declining to decide whether *Kingsley* affected a pretrial detainee's medical care claim); *Perry v. Durborow*, 892 F.3d 1116, 1122 n.1 (10th Cir. 2018) (same, regarding supervisory liability claim). The Court finds persuasive Lt. Carter's argument that the Tenth Circuit has not decided whether *Kingsley*'s objective reasonableness standard should apply to a pretrial detainee's conditions-of-confinement claim and that, absent a Tenth Circuit decision, this Court should continue to apply existing precedent. This approach has been adopted by other district courts in this circuit. *See Bush v. Bowling*, Case No. 19-CV-098-GHK-FHM, 2020 WL 265201, *3 (N.D. Okla. Jan. 17, 2020) (citing cases).

In numerous unpublished opinions issued after *Kingsley* and *Colbruno*, the Tenth Circuit has continued to apply the Eighth Amendment standard to pretrial detainees' claims regarding their conditions of confinement. Earlier this month, the Tenth Circuit stated in the case of a detainee in the Oklahoma County jail:

> "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Because [plaintiff's] claims arose when he was a pretrial detainee, the Due Process Clause of the Fourteenth Amendment governs. *See Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019). "In evaluating such Fourteenth Amendment claims, we apply an

6

analysis identical to that applied in Eighth Amendment cases." *Id*. (internal quotation marks omitted).

The "[d]eliberate indifference [standard] has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective component of deliberate indifference is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Burke*, 935 F.3d at 992 (internal quotation marks omitted). For the subjective component, the plaintiff must "show the official knows of and disregards an excessive risk to inmate health or safety." *Id*. (citation and internal quotation marks omitted).

*Turner v. Okla. Cty. Bd. of Cty. Comm'rs*., No. 19-6092, 2020 WL 995729, *2 (10th Cir. Mar. 2, 2020) (unpublished).

Applying this standard to Plaintiff's claim against Lt. Carter in Count I, the question becomes whether the alleged facts satisfy the subjective component of Plaintiff's claim, that is, whether he has sufficiently alleged that Lt. Carter denied him cleaning supplies after the toilet overflow incident knowing of, but disregarding, an excessive risk to his health. The full extent of Plaintiff's allegations regarding Lt. Carter with regard to Count I are statements that she (and other jail employees) "refused to simply provide . . . inmates within Pod 4-A proper chemical cleaning supplies" to clean the inside of their cells after the November 17, 2017 sewage incident, that the inmates did not receive cleaning supplies for at least two weeks (at the earliest), and that Plaintiff developed a serious staph infection in a wound on his ankle as a result of being exposed to raw sewage. *See* Compl., Decl. C [Doc. No. 1-3] at 6-7 (emphasis omitted). These allegations do not explain what, if anything, Lt. Carter knew about the incident and its impact on Plaintiff's cell, what responsibility she had for ameliorating the problem, or what control she had over inmates'

7

access to cleaning supplies. In short, Plaintiff has not pleaded sufficient facts to show that Lt. Carter was deliberately indifferent to an unsanitary condition in Plaintiff's cell, and therefore, has failed to state a plausible § 1983 claim against Lt. Carter in Count I.[8]

For these reasons, the Court finds that Lt. Carter's Motion should be granted in its entirety and Plaintiff's § 1983 action against her should be dismissed without prejudice.

## II. Lieutenant Hendershott's Objection

Lt. Hendershott objects to Judge Erwin's alleged advocacy on Plaintiff's behalf, by adding Lt. Hendershott as a defendant in Count III even though Plaintiff clearly stated that only Lieutenant Neal was sued in Count III and by identifying from Plaintiff's factual allegations a possible excessive force claim against Lt. Hendershott that Plaintiff did not assert in the Complaint. Lt. Hendershott also contends the alleged facts on which Judge Erwin relies are insufficient to state a § 1983 claim or overcome his qualified immunity.

The Court is not persuaded that Judge Erwin's reading of Plaintiff's prolix and disjointed *pro se* Complaint crosses the line from liberal construction to unwarranted advocacy. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Plaintiff's pleading consists of a prisoner civil rights complaint form and eleven attached declarations ("A" through "J") that Judge Erwin has considered together. The

---

[8] One could reasonably question whether, even utilizing a lesser standard required by *Kingsley*, Plaintiff's factual allegations are sufficient to state a plausible claim against Lt. Carter. Circuits that interpret *Kingsley* as requiring an objective standard for a pretrial detainee's claim have adopted an "objectively reckless disregard" standard. *See Estate of Vallina v. Cty. of Teller Sheriff's Office*, 757 F. App'x 643, 647 (10th Cir. 2018) (discussing Second, Seventh, and Ninth Circuit cases). To show that Lt. Carter acted with reckless disregard of a risk to Plaintiff's health by failing to provide cleaning supplies, Plaintiff would still need to allege some facts regarding Lt. Carter's knowledge of and responsibility for the problem.

Tenth Circuit requires in the case of a *pro se* litigant that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Judge Erwin applies those instructions to Plaintiff's Complaint in precisely the way suggested by Lt. Hendershott in arguing his Motion. *See* Mot. Dismiss [Doc. No. 24] at 13-14.[9] Thus, the Court finds that Judge Erwin has acted within his discretion.[10]

Upon *de novo* consideration of the sufficiency of Plaintiff's factual allegations to state an excessive force claim against Lt. Hendershott, however, the Court reaches a conclusion different from Judge Erwin. To state a § 1983 claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. "[O]bjective reasonableness turns on the facts and circumstances of each particular case," and appropriate considerations include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the

---

[9] As argued by Lt. Hendershott: "[I]t is unclear if Plaintiff's excessive force claim is directed at Defendant Hendershott. . . . However, in Declaration F, Parks mentions Defendant Hendershott and claims that Defendant Hendershott used excessive force when Parks was moved to administrative segregation. [ECF 1-6, at p. 7]. To the extent that Plaintiff seeks to hold Defendant Hendershott personally liable for use of excessive force, his claim fails." *Id*.

[10] A liberal reading of Count III is plainly required because, in addition to alleging an incident of excessive force by Lt. Neal, Plaintiff frames his claim as one for a violation of the Eighth Amendment, which clearly is not the applicable standard following *Kingsley*. *See* Compl., Decl. I [Doc. No. 1-9] at 2.

9

amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (internal quotation omitted).

Judge Erwin finds that certain factual allegations in Plaintiff's Declaration F, when viewed objectively, state a plausible claim against Lt. Hendershott for using excessive force against Plaintiff on February 28, 2018. *See* R&R at 22. Read in context, Plaintiff describes an incident in which Lt. Hendershott and three other officers forcibly removed Plaintiff from Pod 4-A and took him to an administrative segregation unit on the twelfth floor. When placing Plaintiff in his new cell on the twelfth floor, Lt. Hendershott allegedly committed an "unwarranted" use of force by "unjustly shoving [Plaintiff's] face into a concrete wall and bending [his] wrist and hand into his forearm without any just cause, and only upon Hendershot's sadistic malicious whim." *See* Compl., Decl. F [Doc. No. 1-6] at 6-7. Lt. Hendershott allegedly told Plaintiff the move and the use of force were to "teach [him] a lesson for submitting so many grievances." *Id.* at 7.

Stripped of conclusory statements that the use of force was unwarranted or unjustified, or that it was done maliciously and sadistically, the Court finds that Plaintiff provides insufficient factual allegations to assess the objective reasonableness of Lt. Hendershott's conduct.[11] Although Plaintiff describes circumstances where there was

---

[11] In *Routt v. Howard*, 764 F. App'x 762 (10th Cir. 2019) (unpublished), the court of appeals considered somewhat similar allegations by a pretrial detainee regarding rough treatment in the Tulsa County jail. The court concluded: "It is not objectively unreasonable for a jail officer to hold a detainee's arm and push him, even awkwardly, through a jail hallway." *Id.* at 766. The court rejected arguments that the force "was used maliciously and sadistically" as conclusory statements that were not sufficient to state a plausible claim. *See Routt*, 764 F. App'x at 767.

no apparent need to use force and no active resistance, he provides no factual basis to gauge the amount of force used (to shove him and bend his wrist), nor he does claim to have suffered any injury. A jail prisoner cannot recover damages under § 1983 without a physical injury. *See* 42 U.S.C. § 1997e(e). In short, the Court finds that Plaintiff has failed to state a § 1983 claim of an excessive use of force against Lt. Hendershott, particularly in light of his defense of qualified immunity.[12]

For these reasons, the Court finds that Lt. Hendershott's Motion should be granted in its entirety and Plaintiff's § 1983 action against him should be dismissed without prejudice.

### III. Plaintiff's Objection

Plaintiff does not disagree with Judge Erwin's findings and conclusions regarding Counts I and III. The singular focus of his Objection is the sufficiency of, and supervisory liability for, the claim regarding out-of-cell time in Count II. *See* Pl.'s Obj. [Doc. No. 76]. Regarding Judge Erwin's finding that Defendants are entitled to qualified immunity from liability on Count II, Plaintiff asserts that the law was clearly established in November 2017 that pretrial detainees were entitled to a certain amount of time outside their cells for exercise or recreation. Relying on *Housley v. Dodson*, 41 F.3d 597 (10th Cir. 1994), and

---

[12] In *Routt*, the court of appeals considered three incidents of alleged excessive force and found as to some allegations that the detainee failed to state an objectively unreasonable use of force and, as to others (such as "slinging Mr. Routt into his cell causing injury"), that the detainee had failed to overcome the officer's qualified immunity by "provid[ing] precedent that squarely governs these alleged facts." *See Routt*, 764 F. App'x at 767. Precedent involving similar circumstances is required because cases that "lay out excessive force principles at only a general level" do not "create clearly established law outside an obvious case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (internal quotation omitted).

cases cited therein, Plaintiff asserts that federal courts have recognized a constitutional right of inmates to receive at least five hours per week of out-of-cell exercise or recreation, in addition to constitutionally required activities like showers and law library access, particularly (according to Plaintiff) when the inmates are confined for 90 days to 18 months in small, overcrowded spaces like his jail cell. Plaintiff asserts that his factual allegations show he received a fraction of the required amount of recreation time due to understaffing of the jail, specifically, a lack of guards on weekdays after 5:00 p.m. and on weekends, for which Sheriff Taylor, Lt. Carter, and Lt. Hendershott were directly responsible.

Upon *de novo* consideration of the issue of Defendants' qualified immunity from liability for the conduct alleged in Count II, the Court fully concurs in Judge Erwin's conclusion that the contours of a pretrial detainee's constitutional right to out-of-cell time are not clearly established. *See* R&R at 19. This is true regardless of what constitutional standard governs a pretrial detainee's conditions-of-confinement claim, discussed *supra*.

"[W]hen a defendant raises a qualified immunity defense in a Rule 12(b)(6) motion, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (internal quotation marks omitted).[13] Courts "may decide which of these two prongs to address first,

---

[13] Qualified immunity also applies to supervisory liability in § 1983 cases. *See Perry v. Durborow*, 892 F.3d 1116, 1123, 1127 (10th Cir. 2018) (holding defendant was entitled to qualified immunity for claims based on his supervisory conduct).

12

and need not address both." *Estate of Redd ex rel. Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017). "The precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (internal quotation and emphasis omitted); *accord Apodaca*, 864 F.3d at 1076. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v Katz*, 533 U.S. 194, 202 (2001), *modified on other grounds by Pearson v. Callahan*, 555 U.S. 223, 240-43 (2009). "Qualified immunity protects all officials except those who are 'plainly incompetent or those who knowingly violate the law.'" *Apodaca*, 864 F.3d at 1076 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)).

Plaintiff's reliance on *Housley* to establish that pretrial detainees have a right to exercise or recreation time outside their cells for at least five hours per week, is misplaced. There, a jail inmate alleged "that he was allowed only thirty minutes of out-of-cell exercise during a three-month period," and the Tenth Circuit found that his allegations stated a § 1983 claim against the county sheriff. *Housley*, 41 F.3d at 598. Although the court of appeals expressed agreement with a view that "a failure to provide inmates (confined for

more than a very short period) with the opportunity for at least five hours a week of exercise outside the cell raises serious constitutional questions," the court did not attempt to set a precise standard for "delineating what constitutes constitutionally sufficient opportunities for exercise." *Id*. at 599 (internal quotation omitted). Instead, the Tenth Circuit expressly recognized in *Housley* that an adequate opportunity for exercise "will depend on the circumstances of each case, including the physical characteristics of the cell and jail and the average length of stay of the inmates." *Id*.

In the years since *Housley* was decided, the Tenth Circuit has revisited the question of out-of-cell or outside exercise on multiple occasions, but none of those cases announced a bright-line rule or involved materially similar circumstances that would provide clear guidance for this case. *See*, *e.g.*, *Apodaca*, 864 F.3d at 1078 (holding prison officials were entitled to qualified immunity in action involving 11-month ban on outdoor exercise); *Lowe*, 864 F.3d at 1211 (same, where prison inmate alleged deprivation of outdoor exercise for two years and one month); *Ajaj v. United States*, 293 F. App'x 575, 584 (10th Cir. 2008) (unpublished) (holding prison inmate failed to state § 1983 claim by alleging he was denied outdoor recreation for one year); *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (holding prison inmate stated § 1983 claim by alleging he was denied all outdoor exercise for three years); *Perkins v. Kan. Dep't Corr.*, 165 F.3d 803, 810 (10th Cir. 1999) (holding prison inmate stated § 1983 claim by alleging he was denied outdoor exercise for more than nine months). The Court, like Judge Erwin, is aware of no case law holding that jail

14

officials are constitutionally required to provide pretrial detainees with a minimum of five hours per week of out-of-cell recreation time, as argued by Plaintiff.

For these reasons, the Court finds that Defendants are entitled to qualified immunity from individual liability on Plaintiff's claim of excessive in-cell time alleged in Count II of the Complaint. Therefore, the Court finds that the Motions of Sheriff Taylor, Lt. Carter, and Lt. Hendershott should be granted and the claim asserted against them in Count II should be dismissed.

IT IS THEREFORE ORDERED that the Report and Recommendation [Doc. No. 50] is ADOPTED in part, as set forth herein. All pending Motions to Dismiss [Doc. Nos. 22, 23, 24 and 44] are GRANTED. Plaintiff's action against Defendants P.D. Taylor, Tiffany Carter, Christopher Hendershott, and Keith Jackson is DISMISSED without prejudice. The case remains under referral to Judge Erwin for further proceedings.

**IT IS SO ORDERED** this 17th day of March, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge